From the order entered in accordance with this decision the purchaser appealed to the Court of Appeals. The case was submitted on points at the April term, 1859, and the order affirmed.

---

## TITUS *a.* RELYEA.

*Supreme Court, Fourth District; General Term, October,* 1858.

SUMMONS.—SERVICE BY PUBLICATION.—JURISDICTIONAL OBJECTION.

Though an order *dismissing* a motion on the ground of laches is not appealable, yet where the court entertain a motion and receive affidavits on the merits from both sides, an order *denying* the motion, though upon the ground of laches, is appealable.

The court cannot acquire jurisdiction by the laches of the defendant. And a motion to vacate a judgment for jurisdictional objection—*e. g.,* insufficient service of summons—should not be deemed prejudiced by delay in making the motion.

The strict rule of the old practice requiring a party to move against an irregularity at the first special term, is not applicable under the present system, by which the special terms in a judicial district are held successively at different places in the district.

In an action where the summons was ordered to be served by publication, neither the summons published, nor the answer and complaint mailed to the defendant, contained any mention of the State in which the action was brought, but named the court and county as " Supreme Court, county of Montgomery," and it was not stated in the body of the summons that the complaint had been filed, but a notice thereof, with a separate signature of the attorneys was subjoined to the summons when published.

*Held*, insufficient to give the court jurisdiction, and that judgment entered by default on service of such summons must be set aside.*

Appeal from an order denying a motion to vacate judgment.

This action was brought to recover money demanded upon contracts and a judgment. At the commencement of the action the plaintiff obtained an attachment under the Code, against the property of the defendant, on the ground that he was a non-resident, and also an order for service of the summons by publication. This order directed the publication of the summons, " a copy of which is hereunto annexed." The copy annexed was in the form given below, but without the addition of notice of the filing of the complaint.

The summons with such a notice appended to it were subsequently published as directed by the order. They were in the following form :

"SUPREME COURT, COUNTY OF MONTGOMERY.—William Titus *a*. Peter Relyea.—To Peter Relyea defendant. You are hereby summoned to answer the complaint of the plaintiff in this action, which will be filed with the clerk of Montgomery county, and to serve a copy of your answer on the subscribers, at their office, in the village of Canajoharie, county of Montgomery, within twenty days after the service of this summons, exclusive of the day of service ; and if you fail to answer said complaint as hereby required, the plaintiff will take judgment against you for," &c.

"Dated September 13, 1857.

" COOK & MORRELL,
Plaintiff's attorneys."

* Compare Cook *a*. Esleeck, *Ante*, 170.

Titus *a.* Relyea.

" The complaint in said action was filed in the clerk's office of the county of Montgomery on the 1st day of October, 1857.

" COOK & MORRELL,
Plaintiff's attorneys."

The complaint in the action, a copy of which was on the 2d day of October mailed with the summons to the defendant, at his supposed residence, Plainfield, New Jersey, stated the name of the court and county as " Supreme Court, county of Montgomery," but contained no mention of the name of this State.

The plaintiff obtained judgment by default on the 31st day of December, 1857.

The defendant in March, 1858, moved at special term for an order setting aside the judgment on the ground of irregularity in the proceedings, and want of jurisdiction. He appeared for the purposes of the motion only. His affidavit stated that he resided in Newark, New Jersey; that he removed there in October, 1857, from Plainfield, in the same State ; that he never received any summons or complaint, or copy of either, nor any paper whatever in the case ; that the first he ever heard of the action, or that one had been commenced, was about the 1st of January, 1858, and then he merely heard by accident of the commencement of it, but did not learn any of the particulars thereof, and that he had no definite or authentic information in regard to it, until about the 10th of February, 1858, when he got a copy of the judgment-roll, from which he learned the grounds of the action, and the proceedings had therein.

This motion was denied at special term, on the ground that the defendant had been guilty of laches in making the same, but without prejudice to the defendant's rights to move for leave to appear and defend on terms.

The defendant now appealed to the general term.

*S. T. Freeman,* for the appellant.—I. These general principles are well established. 1. That " in order to bring a defendant into court, and subject him to its jurisdiction, so as to authorize it to enter a valid judgment, a summons must be served in one of the modes prescribed by the Code." (Kendall *a.* Washburn, 14 *How. Pr. R.*, 382.) 2. That " under all statutes which authorize the substitution of some other means for per-

sonal service of process, as a foundation for the jurisdiction of the court, the most exact compliance with those requirements will be enforced, and unless such compliance be shown affirmatively the proceedings will not be sustained." (Zecharie *a.* Bowers, 3 *Smee & M.*, 645; Evertson *a.* Thomas, 5 *How. Pr. R.*, 46, and cases cited; Hallett *a.* Righters, 10 *Ib.*, 45.) In this case the statute, in many and important particulars, has not been complied with; no process has ever been served upon the defendant; the court has never acquired jurisdiction.

II. The summons in this action does not state where the complaint is or will be filed. (*Code,* § 130.) It states merely *with whom,*—"with the clerk of Montgomery county," but as to *where,* it does not give the slightest intimation. There are fifteen States, each having a Montgomery county, but in which of the fifteen the complaint in this action would be filed, does not appear, either directly or indirectly, from the summons or the complaint, or any other paper contained in the judgment-roll. Were the defendant a resident of this State; or had the summons been personally served in this State, or even did the summons designate the village of Fonda, as the place where the complaint would be filed; in either case it might perhaps be deemed sufficient. But the defendant being, as appears from the plaintiff's own affidavit, a resident of New Jersey, can it be presumed that if he had received or seen a copy of the summons, he would have known or supposed that the State of New York was intended, rather than Pennsylvania, which, like New York, has a Montgomery county, and a Supreme Court, and adjoins New Jersey. It may be here noted that, as appears from the complaint, each *cause of action* therein stated arose in New Jersey, where *plaintiff* and *defendant both* resided.

III. The summons, as published, must state the time and place of the filing of complaint. (*Code,* § 135.) To satisfy this requirement in this action, a notice is published with or under the summons, to the effect that the complaint " was filed in the clerk's office of the county of Montgomery, on the 1st day of October, 1857." This is insufficient, because, 1. The statute says that " *the summons* must state," &c., and such a statement being left out of the summons, there is no authority for supplying the omission by a supplemental note like this. As well might the " relief " demanded be left out of the body of the summons,

and inserted or added rather by way of a postscript. Or one kind of relief might be demanded in the body of the summons, and another in the notice. The statement in the notice and that in the body are inconsistent. 2. If a notice of this kind could be in any instance sustained, it could *only* be, by making or considering it *a part of* the summons. If, however, this notice is *a part of* the summons in this case, then there are *two* summonses, or an *amended* summons. For the notice was not attached to the original summons, nor to the one ordered to be published, nor could it have been, for the complaint had not yet been filed when the order of publication was made. The order of publication shows that *a* summons had been issued, and refers to and identifies it, and orders *it* to be published. (Rawdon a. Corbin, 3 *How. Pr. R.*, 416.) The plaintiff's attorneys had no power afterwards to alter or amend it, or to publish another in its stead. 3. The notice, thus added to the summons, is of itself insufficient, inasmuch as *it* does not state THE PLACE of the filing of the complaint. In this respect it is but a very slight, if any improvement upon the statement contained in the body of the summons.

IV. The complaint does not sufficiently specify the *court* in which the action is brought, nor the *county* in which the trial is, or was to be had. There is in New Jersey a Supreme Court, and of the fifteen States which have a Montgomery county, eleven have also a Supreme Court, known by that name. In the papers in this case there is not a word which would lead a resident of another State to suppose that the Supreme Court, or the Montgomery county, of the State of New York is intended. The word New York only appears in connection with city and county in plaintiff's affidavit.

*Cook & Morrell*, for the respondent.

BY THE COURT.*—POTTER, J.—The defendant, by law in such a case as this, is limited in his application for relief to a *motion*, as the only remedy that exists for him to review the question of *jurisdiction* in a proceeding by which he may lose his estate. By the decision of the special term, he has been

* Present, JAMES, ROSENKRANS, and POTTER, JJ.

restricted even in this right of review, and directed to make another application, and to submit such terms, if he makes that application, as the court before whom it is made may there impose; which terms may be to allow a judgment that may have been obtained without jurisdiction of his person or estate to remain as security to await a trial on the merits of the claim. And thus he may be cut off from examining the question of jurisdiction, not only by being compelled to submit to error against right, but by a reversal of the ordinary course of practice and having a judgment entered against him before trial. If the court had no jurisdiction in this case, such a decision is obviously wrong, because it is, and ever has been, the policy of this court to allow the question of jurisdiction to be raised at any time. He ought to be allowed this privilege certainly, on the first he can get into court. Without jurisdiction, even in this court, the whole proceeding is *coram non judice.*

A party ought not by any compulsion in practice to be forced to admit jurisdiction. This motion, as has been stated, was denied solely on the ground of laches, and although I have not been able myself to discover any, still as they have been adjudged by a member of the court, I would not undertake to review the decision upon that ground, except that the question of jurisdiction, *to which laches never apply,* arises in the case. If any one principle more than another is well settled by the courts, it is that they cannot acquire jurisdiction by laches. And although a party may waive an irregularity by such means, courts cannot impart vitality to a void judgment by any action based upon laches. And an adjudication that there has been laches, does not of itself confer jurisdiction. Let us then examine the question of jurisdiction. In this case, claim is made of jurisdiction over the personal property of the defendant, by a substitute provided by statute, for personal service. In all such cases we are bound to see that the statute has been strictly pursued. The persons and estates of individuals would be subject to alarming hazards if jurisdiction could be obtained over them by any thing less than the fullest compliance with all their requirements. In Evertson *a.* Thomas (5 *How. Pr. R.,* 46), Parker, Justice, says, after citing various cases, " it will appear by these cases, how careful the courts have been to see that the statute is strictly complied with, in pro-

Titus *a.* Relyea.

ceedings which subject property to seizure and sale without a personal service of process on the owner. The duty to protect against injustice is certainly none the less obligatory under the Code, which authorizes the recovery of judgment in so many cases on a mere publication of notice, substituted in the place of personal service."

The obvious design of the statute, which requires the commencement of an action to be by summons, is to give the defendant notice, not only of the commencement of the action, but when and most especially *where*, he may appear and defend it, and this whether served personally or by publication. A defendant residing in any State that has no Montgomery county in it, who should be sued in an action commenced by summons and complaint, sent to him by mail by a stranger, for a cause of action arising in his (defendant's) own State, which summons and complaint should communicate to him only the fact that the suit was commenced in the Supreme Court, Montgomery county (without naming the State), or though it should further state that the complaint would be filed with the clerk of that county, without naming the location of the clerk's office or the clerk's residence, would not be far advanced in the information necessary for his defence. The design of the statute in such case, would be quite ineffective to that end. If, as we are informed, there are fifteen States in the Union, each having a Montgomery county, he would rather find confusion and embarrassment from reading his papers, than the designed information which it was the object of the statute to communicate. And the time which is afforded by the statute to make his answer, might be quite too short for the purpose.

In my opinion, this is not a compliance with the strict demands of the statute, which requires the summons to state, "*where the complaint is, or will be, or has been filed.*" In cases of publication, the name of the State should somewhere appear; it should be in the summons, and I think that it should be in the complaint. That it should be in the summons, is entirely apparent to me, from the language of section 128 of the Code, which reads as follows : " The summons shall be subscribed by the plaintiff or his attorney, and directed to the defendant, and shall require him to answer the complaint, and serve a copy of his answer on the person whose name is subscribed to

the summons *at a place within the State to be therein specified.*"
Now, whether it is the *State* or the *place*, or *both*, that is re-
quired to be specified, the object beyond all doubt is *so to spe-
cify* that it may avail to inform and not to confuse the party.
In this case, neither *State* nor *place* are specified in the summons
or complaint. Had the clerk's residence, or the town or city
in which the office was located been given, it might have aided
the defendant in his necessary study of geography; this it did
not give. In case of a personal service in the same State, this
might perhaps suffice.

Taking the several sections of the Code, from section 127 to
section 135 together, I have no doubt that the proper form of
the summons required to be published in case of a non-resident
defendant, is, that it should state that the complaint *has been
filed*, and that it should have this form where the order of pub-
lication is obtained. Otherwise, as in this case, the summons
annexed to the complaint, will not be a copy of the summons
published. Where the defendant is a non-resident of the State,
no diligence to serve is required to be shown. (§ 135, subd. 3.)
The statement of the fact of non-residence is sufficient to obtain
the order of publication, and this fact is usually as well known
before as after issuing the summons.

In the case of publication, the Code (§ 135) requires that " *the
summons as published, must state the time and place of such
filing.*" This I think was not done in this case. The sum-
mons as published, is dated the 13th of September, 1857, and
is an exact copy in every particular of the summons annexed
to the complaint, and of that contained in the judgment-roll,
which states that the complaint *will be* filed. Appended to the
summons *as published*, is a notice stating as follows : " The
complaint in said action (meaning doubtless the action referred
to in the summons), was filed in the clerk's office of the county
of Montgomery, on the 1st day of October, 1857." This no-
tice, it will be seen, could not have been appended earlier than
the date of the occurrence to which it refers, to wit.: the filing
of the complaint, October 1st. It could not, therefore, have
been a part of the summons issued on the 13th of September,
nor of the one directed to be published by the county judge,
on the 30th of September. This notice could not have been a
part of the original summons, and is no part of the summons in

the judgment-roll. The party had no power to amend it. An amendment could only be made by an order of the court, and there is no evidence that this was obtained. The summons *itself*, therefore, as published, did not state *the time and place of such filing*. And although it may be said, that for all practical purposes the notice was just as good and just as communicative as the summons, yet this was a jurisdictional fact, and the omission to insert in the summons as published, that " the complaint *was filed*," and " the *time* and *place* of such filing," is fatal to the judgment. (Randall *a.* Washburne, 14 *How Pr. R.*, 381, 382; Hallett *a.* Righters, 13 *Ib.*, 44, 45, 46, and cases cited.) See Rawdon *a.* Corbin (3 *Ib.*, 416, 417), *per* Hand, who says : " The order of publication should show that there *was* a summons and identify it. Ordering a summons to be published in anticipation of one being made out, would not connect them on the record, except by reference to the claim, which is unsafe. It is *the* summons which is to be published."

There are several other objections to the validity of this record, not necessary to be discussed. I am satisfied that the doctrine of laches upon which the special term placed the decision of the motion, was error in this case, because there was no jurisdiction acquired, and that the order made should be reversed with costs, the order set aside, the judgment set aside, and plaintiff to be permitted to amend and re-serve the summons.

JAMES, J.—This was not a motion to set aside the judgment for irregularity merely, it also involved the question of jurisdiction, and hence it was a matter of substance, affecting a substantial right. An order denying such a motion is clearly appealable. (9 *How. Pr. R.*, 460; 10 *Ib.*, 89.)

The motion was denied upon the ground of laches, but being a denial it does not affect the right of appeal. It was, no doubt, a matter of discretion with the special term, when laches were shown, to hear or dismiss the motion, and had an order of dismissal been entered, I do not think it would be appealable; but the court having sustained the motion, and received affidavits on the merits from both sides, an order denying the motion, although upon the ground of laches, cannot be regarded as a dismissal of the motion, but an order in the cause.

I am unable to discover that the defendant has been guilty of

any such laches, as ought to drive him from the door of justice unheard. This judgment was not docketed until the last day of December, 1857; the defendant swears he knew nothing about the cause until about the 1st of January, when he casually heard that the plaintiff had commenced an action against him, and not until the 10th of February did he know what had been done in the matter. A party, upon mere rumor that an action has been commenced against him, is not bound, at his peril, lest he be charged with laches, to exercise the utmost vigilance to ascertain what proceedings are being had against him. It is sufficient if he exercise reasonable diligence, and proceed at once after knowledge obtained. The defendant resided in New Jersey; judgment was docketed in Montgomery county, and he learned within one month and ten days after entry that such judgment had been obtained; this must be regarded as reasonable diligence. But one special term was held in the district after that date, and before the one at which defendant moved; and that on the 16th of February, too late to give notice of the motion.

The strict rule of requiring a party to make his motion at the the first special term, which prevailed under the old practice, is not in its strict letter applicable in the present system. The special terms were then held at regular periods, at one place; now special terms are held at different locations, at irregular periods, often two or three in a month, some near and some remote, from the parties and place of trial; and to compel a party to travel from one end of a district to the other, to make a motion, because the first term is to be there held, when perhaps in the next or second week after, a term would be held in the immediate vicinity of the parties, would greatly enhance the labor and expense of litigation, without any corresponding benefit to the cause of justice, or protection to the rights or interests of parties.

In this view no laches were imputable to the defendant in this case.

No valid judgment can be rendered against a defendant in any court, unless such court first obtain jurisdiction of his person by some one or other of the modes prescribed by law. Jurisdiction is claimed in this case by the publication of the summons and a deposit of the summons and complaint in the post-

Titus *a.* Relyea.

office, directed to the defendant, under the authority of section 135 of the Code : that provision is intended as a substitute for personal service, and being in derogation of the common-law principle, the statute must be strictly observed, and all its provisions fully complied with, before jurisdiction is obtained.

This section of the Code, especially requires that "in all cases where publication is made, the complaint must be first filed, and the *summons as published* must state the time and place of such filing."

The summons as published in this case did not state the time and place, when and where the complaint was filed. Following the summons, and published with it, was a notice, stating the time and place of such filing of the complaint, but such notice is no part of the summons, and hence the publication is not a compliance with the statute, and the proceeding failed to confer jurisdiction upon the court, to pronounce judgment against the defendant.

For all practical purposes the notice was no doubt amply sufficient to inform the defendant where the complaint might be found, and had the court any discretion in the matter I should so hold. But the act is imperative. It does not say a notice may be attached to the summons as published, stating the time and place of filing, but the language is, " *the summons* as published—*must* (not may) state the time," &c., and the courts have no right,—they cannot, in a question of jurisdiction, disregard so plain and express a provision of the law.

This is fatal to the plaintiff's case.

The publication of summons, the judgment, and all proceedings subsequent should be set aside, with $10 costs of this appeal. Plaintiff to have leave to amend and serve the defendant with the summons as required by the Code, with leave to the defendant to answer in twenty days, or in default of answer this judgment to stand. Nothing herein to affect the plaintiff's rights under the attachment.